ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY V. J. S. FRANKLIN.

Decided May 7, 1910.

1.—Carrier—Shipping Contract—Lex Loci Contractus—Submission of Issue— Practice.

In a suit against a railroad company for damages to a shipment of live stock, the defendant plead that the shipment was carried under and by virtue of a written contract executed in the State of Arkansas and was mainly to be performed in and was controlled by the law of that State; that said contract of shipment provided that in case of any claim for injury to said stock, the plaintiff should give notice thereof in writing to the defendant within a certain time after arrival of stock at destination, and that a failure to do so should bar a recovery for damages; that the contract also provided that the damages should be estimated according to the actual cash value of the animals at the time and place of shipment, not to exceed a certain amount per head; that said provisions were valid and binding in Arkansas; and that the plaintiff failed to give the notice of his claim for damages as above stipulated. The plaintiff replied that there was no consideration for said contract; that the same was not fairly made and was not reasonable in its terms. The undisputed evidence showed that the contract was made in Arkansas and was valid and binding there; that the plaintiff had an option of shipping the stock under either of two contracts in which the liability of the defendant and the freight rate varied, and that he voluntarily chose the contract containing the above stipulations and paid about half the freight rate that he would have paid under the other contract, and that the plaintiff did not give notice of his claim for damages as required in the contract; there was no evidence that the stipulation concerning the giving of notice of claim for damages was unfair or unreasonable. The court by its charge authorized a verdict for the defendant only in the event they found that there was a reduction in the freight rate or other consideration for the contract, or that the plaintiff had an option of shipping under a contract which did not contain the limitation on defendant's liability above mentioned and that said stipulations and conditions were reasonable. Held, that the court erred in submitting said issues to the jury, there being no conflict in the evidence.

2.—Same—Option as to Contract—Evidence.

Evidence considered and held to show without conflict that a shipper had an option in shipping contracts, varying in the carrier's liability and freight rates.

3.—Same.

When the shipping contract which a shipper accepts and signs, itself recites that the rate of freight charged is less than the rate charged for shipments at the carrier's risk, and that the shipper has had the option of making the shipment under the tariff rates either at the carrier's risk or upon a limited liability, the testimony of the shipper that the agent of the carrier never gave him a choice of but one kind of contract and only one rate, which he supposed was the regular tariff rate, was not sufficient to warrant a finding, in the face of other evidence also to the contrary, that no reduction of rates was given or that the contract was not fairly made.

**4.—Same—Shipping Contract—Notice of Damages—Statutes.**

A statute of the State of Arkansas considered and held not to inhibit or invalidate a stipulation in a shipping contract that the shipper, in order to have a right of recovery, should give the carrier notice within a certain time and in a certain manner of a claim for damages to the shipment, but which did inhibit and invalidate a limitation upon the carrier's liability for the value of animals killed or injured.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*Leake & Henry, Wood & Wood* and *T. B. McCormick,* for appellant.

*H. L. Carpenter,* for appellee.

TALBOT, Associate Justice.—J. S. Franklin sued the St. Louis Southwestern Railway Company of Texas, (known as the Cotton Belt), the Southern Railway Company, and the appellant, St. Louis, Iron Mountain & Southern Railway Company to recover damages for alleged injuries to horses and mules shipped over the respective roads of said railway companies from Greenville, Texas, to Selma, Alabama. There were two carloads of the stock, consisting of two horses and forty-eight mules. The shipment was received by the Cotton Belt at Greenville under a contract to transport it to Texarkana, where by contract entered into with the appellant, the transportation was continued to point of destination routed over the Southern Railway Company. Plaintiff alleged that because of injuries received in transit, from delay, rough handling, and confinement in the cars, the market value of the animals at Selma, Alabama, was greatly decreased and that he sustained damages thereby in the total sum of $4,000. Of this amount, he sought to recover of the Cotton Belt the sum of $20 and of each of the other defendants, the sum of $1990.

All of the defendants filed answers, but as the St. Louis, Iron Mountain & Southern Railway Company alone appealed from the judgment of the lower court, it is unnecessary to set out the pleadings of the other defendants. The appellant pleaded a general denial and, specially, that the shipment was carried by the St. Louis, Iron Mountain & Southern Railway Company only from Texarkana, Arkansas, to Memphis, Tennessee, under and by virtue of a written contract executed by and between said company and the plaintiff, in which the undertaking of said company and its liability to the plaintiff was restricted and limited to its own line of railway, and that the liability of this defendant terminated when, after having carried the shipment properly between the said points, it delivered the same to its next connecting carrier, the Southern Railway Company, at Memphis. That under the contract plaintiff assumed the duty of caring for the stock in transit, and that if the same suffered at all it was from a failure of the plaintiff to perform this obligation, or it was the inherent vice of the animals themselves, and that the defendant was not responsible. That the contract of shipment between the plaintiff and the St. Louis, Iron Mountain & Southern Railway Company was executed in Arkansas, and was mainly to be performed in said State and was controlled by the

law of Arkansas; that said contract of shipment, among other things, provided that suit for any claim of damages should be brought within six months, and that in case of any claim for injury or damage the plaintiff should give notice in writing of the same at point of destination, or at point of shipment, to designated agents, within one day from the time of arrival at destination, and before the live stock was removed from the unloading station, and that all injury or damage should be estimated according to the actual cash value of the animals, at the time and place of shipment; that all of said provisions were valid and binding; that no notice in writing of any claim or injury was given, as required by the terms of the contract, though there was an agent of this defendant at Memphis, the destination on said defendant's line. That the shipment was carried over the line of said railway without any unreasonable or unnecessary delay, or rough, or improper handling.

The case was tried before a jury and resulted in a verdict and judgment in favor of the plaintiff, against the St. Louis Southwestern Railway Company for $20, against the Southern Railway Company for $446, and against the appellant, St. Louis, Iron Mountain & Southern Railway Company, for $1220. Appellant's motion for a new trial being overruled, it perfected an appeal to this Court.

The court charged the jury as follows: "The defendant, St. Louis, Iron Mountain & Southern Railway Company, pleads that the said animals were shipped over its line under a written contract between it and the plaintiff, by the terms of which the plaintiff assumed the duty of caring for said animals in transit, and accompanied them for that purpose; that plaintiff also agreed by the said contract that in case of injury to said animals, he would give notice in writing of such injury or damage within one day after their arrival at their destination, and before the animals were removed from the unloading station, to the agent at the point of destination, and would bring suit for such damages within six months after the accrual of the cause of action therefor; and that all injuries and damages should be estimated according to the actual cash value of said animals at the time and place of shipment; it is in evidence that the plaintiff signed the said contract. Plaintiff pleads no consideration for said contract, that said contract was not fairly made, and is not reasonable in its terms. You will find, therefore, for the defendant, St. Louis, Iron Mountain & Southern Railway Company, unless you believe from the evidence that there was no reduction in the freight rate or other consideration for the execution of said contract; or that no choice was given the plaintiff by the said defendant of shipping under a different contract, not containing said stipulations and limitations of the defendant's liability; or that the said stipulations and conditions were not fair and reasonable in their terms."

In this connection the appellant requested the court to charge the jury as follows: "The shipping contract entered into between the plaintiff and the St. Louis, Iron Mountain & Southern Railway Company, contains the following provision, to wit: 'That as a condition precedent to any damages or any loss or injury to live stock covered by this contract, the second party, the shipper, will give notice in writing of the claim therefor to some general officer, or to the nearest station

agent of the first party, the railroad company, or to the agent at destination or some officer of the delivering line, before such stock is removed from the point of destination or the place of shipment, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of the stock at destination, to the end that such claim may be fully and fairly investigated; and, that a failure to comply with the provisions of this clause shall be a bar to the recovery of any and all claims.' You are instructed that if you believe from the evidence, said shipping contract was executed in the State of Arkansas, then it would be governed and construed by the laws of Arkansas. And if you further believe from the evidence that said provision was valid and binding at the time it was made under the laws of Arkansas, and, further, that plaintiff on the arrival of his stock at their destination, to wit: Memphis, failed to give the defendant notice of plaintiff's damages as provided in said provision, then the St. Louis, Iron Mountain & Southern Railway Company would not be liable to plaintiff for any damages caused to his stock after the execution of said contract." This special charge with the following qualification was given: "In order for said contract to be valid and binding, plaintiff must have had an opportunity to make a contract to ship his stock without such provisions in the contract; that there must have been given him a reduction in freight rate or some other consideration for the contract, and that under all the circumstances, the provisions relied on were reasonable and fair."

That portion of the general charge quoted, authorizing a verdict in favor of appellant only in the event the jury should believe from the evidence, that there was no reduction in the freight rate or other consideration for the execution of the shipping contract, or that no choice was given the plaintiff by the defendant of shipping his stock under a contract not containing the stipulations and limitations of the appellant's liability as set forth in said contract, or that said stipulations and conditions were not fair and reasonable in their terms, and the qualification of the special charge as shown by the court's endorsement thereon, is assigned as error. The contention is, in effect, that the evidence conclusively showed the following facts: that the plaintiff did not sign the shipping contract made with appellant under any species of duress; that the plaintiff had the option of making the shipment under the tariff rates either at carrier's risk or upon a limited liability, and that plaintiff voluntarily signed the limited liability contract; that by the terms of the contract entered into between the appellee and appellant, appellee's animals were tranported at a rate of freight fifty percent less than they would have been, had not such contract been made; that there is no evidence that the contract made was not fair and reasonable in its terms; that said contract was executed in the State of Arkansas and was valid in said State, and binding on the plaintiff if he did not give notice of his claim for damages as provided in said contract.

We think the contention of appellant is sustained by the record. The evidence is undisputed that the contract of shipment in question was entered into at Texarkana, Arkansas, and that the appellant had for the shipment of live stock over its line of railway two kinds of con-

tract, one known as the "Limiting Liability Contract," and the other, "The Carrier's Risk Contract;" that the contract signed by appellee for the shipment of his horses and mules over appellant's road provides that as a condition precedent to liability for any damages, loss or injury to live stock covered by said contract, the appellee shall give notice in writing of his claim therefor to some general officer, or to the nearest station agent of the appellant, or to the agent at destination one day before the animals are removed therefrom or mingled with other stock, and that a failure to comply with such provisions shall be a bar to the recovery of any and all claims; that this provision of the contract in regard to giving notice of appellee's claim for damages, was not complied with; that the rate of freight for transporting live stock under the terms of this contract is fifty percent less than the rate charged for carrying them under the terms of the carrier's risk contract.

S. R. Hodgen, agent representing the appellant in the execution of the contracts of shipment at Texarkana, testified: "On October 13, 1907, there was a contract of shipment made and signed up between the St. Louis, Iron Mountain Railway Company, and J. S. Franklin for the transportation of a shipment of a car of horses and mules, which horses and mules were delivered by J. S. Franklin to the Iron Mountain Railway at Texarkana, for shipment to Selma, Ala., on or about that date. On same date a contract of shipment containing twenty-three head of mules was made, and signed up between the Iron Mountain Railway Company and W. R. Caldwell, said shipment being consigned to W. R. Caldwell for shipment to Selma, Ala. I signed said contracts for W. E. Feaster as agent for the said railway company, also signed my name as a witness. J. S. Franklin and W. R. Caldwell came to the office and called for the contracts. Both parties signed these contracts willingly. They made no objection whatever to signing these contracts, both being present when said contracts were made." The shipping contract recites that the rate of freight charged is less than the rate charged for shipments transported at carrier's risk, and, "that in making this contract the undersigned owner, or other agent of the owner of the stock named herein, expressly acknowledges that he has had the option of making this shipment under the tariff rates, either at carrier's risk or upon a limited liability, and that he has selected the rate and the liability named herein, and expressly accepts and agrees to all the stipulations and conditions herein named."

On the other hand, the appellee, J. S. Franklin, testified: "When I signed contracts with the Iron Mountain at Texarkana for the shipment of these horses and mules, the agent never gave me a choice of but one kind of contract to sign and only one rate, which was the regular tariff rate, I suppose." W. R. Caldwell, the party referred to in the testimony of the witness Hodgen, testified: "I signed these contracts in Memphis. I should have said at Texarkana. I signed one contract there. They only offered me the one kind of contract for signing. They gave me no choice of contracts in signing. I had nothing to do with making the contract and the rate between Mr. Franklin and the railway company; Mr. Franklin did that himself."

This constitutes all the testimony showing the circumstances under which the contracts of shipment were executed, and bearing upon the question of whether or not said contracts were entered into in consideration of a reduction of the freight rate or other consideration, and, together with the terms of the contracts themselves, present all the evidence touching the fairness and reasonableness of the contract. It was shown that, under the law of the State of Arkansas, the provision in a contract for the shipment of live stock requiring notice to be given of the shipper's claim for damages, as is prescribed in the contract under consideration, when based upon a reduced freight rate or other valuable consideration and fairly entered into, is reasonable and binding; that it was so held by the Supreme Court of said State in the following cases: Kansas & A. V. Co., v. Ayers, 63 Ark. 331; St. Louis & S. F. Co., v. Hurst, 67 Ark. 407; Railway Co., v. Pearce, 82 Ark. 353. It further appears that this was the law of Arkansas up to the passage of an Act by the Legislature of that State upon the subject, April 30, 1907.

In this state of the record, though it would have been more satisfactory had it been shown by direct testimony that there was no statute in the State of Arkansas similar to our statute, relating to contracts requiring the shipper of live stock to give notice of his claim for damages, we think the court's general charge in the particulars complained of was error, and that the special charge requested by appellant, without the qualification complained of, should have been given. That the charges attacked would have correctly stated the law, had the evidence raised an issue as to whether or not the contract of shipment was fairly entered into in consideration of a reduced freight rate, is not only affirmed by the decisions of Arkansas, but by a decision of this court in the case of St. L. I. M. & S. Co., v. Boshear, 103 S. W., 1032. But we do not think such issue was raised. As has been seen, the contract recites that the rate of freight charged is less than the rate charged for shipments transported at carrier's risk, and that the owner of the stock named therein (appellee) expressly acknowledges that he has had the option of making the shipment under the tariff rates, either at carrier's risk or upon a limited liability. Neither the appellee nor Caldwell says that he was denied an opportunity to read or acquaint himself with the terms of the contract, or that he was not aware of its terms. Nor do either of them testify that, as a matter of fact, there was no reduction of the freight rate in consideration of the execution of "Limited Liability Contract," or to any fact or circumstance tending to show that said contract was not fairly entered into. The bare statement that the agent of appellant never gave them a choice of but one kind of contract to sign, and only one rate, which they supposed was the regular tariff rate, was insufficient to warrant a finding, in the face of the other testimony, that in fact no reduction of freight rate was given or that the contract was not fairly made. In the case of Railway Company v. Pearce, *supra,* the Supreme Court of Arkansas said: "It was improper to permit the plaintiffs to testify that they signed the contract without reading it, and that the agent did not inform them there was another rate under a contract of unrestricted liability. The agent was not bound to in-

form them unless requested to do so, as information was obtainable from other sources provided by law; and unless the agent refused, upon demand, to accept the shipment at another rate under a contract for unrestricted liability, there is no reason for holding the contract to be void, as this court has held that the contract is valid and binding when it is not forced upon the shipper." These remarks are applicable in this case. There is absolutely no testimony that appellee made any demand upon appellant's agent to accept his stock for shipment at the rate of freight charged for transportation under a contract of unrestricted liability, and that the shipment was refused upon such terms.

But the question arises, has this rule been changed in the State of Arkansas by the Act of 1907, above mentioned? That Act is as follows:

"Section 1. Hereafter, it shall be unlawful for any railroad or any of its agents or employees, to enter into an agreement or contract with any shipper of any live stock, merchandise or other freight for the purpose of abridging, modifying, limiting or abrogating the statutory and common law duties and liabilities of such railroad as a common carrier, and all agreements and contracts made for that purpose are hereby declared to be void, and the same shall not be enforced by any of the courts of this State.

"Section 2. All rules and regulations prescribed by any railroad for the transportation of any merchandise, live stock or other freight, inconsistent with the common law and statutory duties and liabilities of railroads as common carriers, or that in any wise limits or abridges the statutory and common law rights of any such shipper, are hereby declared to be void, and the same shall not be enforced by any of the courts of this State.

"Section 3. It shall be lawful for railroads to prescribe rules and regulations for the transportation of merchandise, live stock and other freight, that are reasonable and not inconsistent with the common law or statutory duties and liabilities of railroads as common carriers. And the reasonableness of such rules and regulations mentioned in this section, shall be determined by a jury in all cases where the same becomes an issue before any court.

"Section 4. That all laws and parts of laws in conflict with this Act are hereby repealed, and that this Act take effect and be in force from and after its passage."

It is very clear that under this statute, any contract or agreement made by a railway company with a shipper of live stock whereby, in the transportation of such stock its statutory or common law duty or liability is abridged, modified, limited or abrogated, is unlawful and void; but it is equally clear that such companies may lawfully prescribe such rules and regulations, for the transportation of such freight, as are reasonable and not inconsistent with their common law, or statutory duties and liabilities.

The rule or regulation of the appellant carried into and made a part of the contract entered into with the appellee in regard to the shipment of his stock, is as follows: "That in case of total loss of any of the live stock covered by this contract, from any cause for

which the first party will be liable, payment will be made therefor on the basis of the actual cash value at the time and place of shipment, but in no case to exceed $100 for each horse, gelding, mare, mule or jack; $50 for each ox or steer; $30 for each cow; $10 for each calf or hog; $3 for each sheep or goat. In case of injury or partial loss the amount of damages claimed shall not exceed the same proportion."* As has been seen, this provision, up to the passage of the Act of 1907, was valid and enforceble. Does it violate or contravene that Act? We think not. The Act imposes no duty or liability which the provision in question abridges, modifies, limits or abrogates, nor do we know of any common law duty or liability that it is inconsistent with. It simply creates an obligation on the part of the appellee, in the event of a claim by him of loss or injury to his stock while in transit, to give notice of such claim, one day before such stock is removed from the point of destination, and before mingled with other stock, to the end that appellee's claim may be fully and fairly investigated, and declares the failure to give such notice shall bar a recovery of the claim. It seeks to impose a duty on the appellee which the court of last resort in the State of Arkansas prior to the Act of 1907, has uniformly held valid and reasonable, rather than to abrogate, limit or restrict any duty or liability resting upon it as a common carrier. We, therefore, hold that the right of appellant to make and enforce said provision of the contract is not inhibited by the said Act of the Legislature of 1907.

We have carefully examined the other assignments of error, and are of the opinion that none of them disclose any error of which the appellant can complain. That provision of the shipping contract seeking to limit appellant's liability, in case of total loss of his stock, to the actual cash value thereof at the time and place of shipment, not to exceed $100 for each horse or mule, and, in case of injury or partial loss, to an amount not to exceed the same proportion, was inhibited, we think, by the Act of the Legislature of the State of Arkansas, passed in 1907, and hence void. Therefore, appellant's special charge relating thereto, and made the basis of appellant's thirteenth assignment of error, should not have been given, with or without the court's qualification to the effect that said provision in order to be binding must be reasonable and fair, and must have been supported by a reduced freight rate or some other consideration. Unlike the provision of the contract requiring notice to be given of appellee's claim for damages, this clause of the contract sought to change appellant's common law liability for the full amount of damages appellee might sustain on account of injuries to his stock by reason of its negligence based on the market value of the said stock at destina-

---

* This quotation is an error. It should have been that provision of the contract to the effect that as a condition precedent to the recovery of any damages for loss or injury to the live stock covered by the contract of shipment, notice in writing of the claim therefor should be given at destination, to a designated agent of the railway company within one day from time of the arrival of the stock, to the end that such claim might be investigated, and that a failure to give such notice should bar an action and recovery thereon.—Talbot, Justice.

tion, to a less amount based on the actual cash value at the time and place of shipment. Prior to the passage of the statute of 1907, referred to, in the condition of the evidence in this case, the qualification of the charge in the manner shown, would have been, under the decisions of Arkansas, error, but as the giving of the charge with the qualification was favorable to appellant, it has no ground of complaint on that score.

For the reasons indicated the judgment of the court below is reversed, and the cause remanded.

*Reversed and remanded.*